Washburn, J.
(orally).
Heard on motion to set aside judgment.
The question in the ease of Emma Burrell v. The Anchor Fire Insurance Company, arises on a motion to set aside the judgment entered at this term of court in said case.
, The judgment was entered in this way: The case was assigned for trial upon the call of the docket at the first of the 'term; it remained upon the assignment for between thirty and sixty days, and finally was reached. At that time it was desired to submit the matter to the jury, but the jury was engaged in deliberating upon a 'verdict in a ease, and remained out longer than was expected, and no one appearing for the defendant, the plaintiff waived a jury trial, and submitted the ease to the court, but did not take a simple default. The case was submitted upon the evidence of the plaintiff. Some evidence was introduced to the court upon all of the material allegations of the petition, and the court, on considering that evidence, entered judgment in accordance with the prayer of the petition.
Now a motion has- been filed to set aside that judgment, and it being filed before the end of the term at which it was rendered, the question was argued as to whether the court had the right to set aside the judgment in the absence of compliance by the defendant with Section 5354 of the Revised Statutes of Ohio, which provides what shall be done in an application to set *323 aside a judgment at a term subsequent to the term at which the judgment was entered.
I find that there is overwhelming authority in the state of Ohio upon the proposition, that a court 'has control of its judgments and decrees up to the end of the term at which they are entered. It may, at its discretion, for good cause shown, set aside and vacate its judgments or modify them. 3 O. S., 445; 9 O. S., 505; 49 O. S., 370; 19 C. C., 237.
The statute mentioned provides certain steps to be taken where it is sought to modify or vacate a judgment upon a petition -filed at a subsequent, term; but those conditions are not binding upon the court in deciding.the matter of granting a motion to set aside >a judgment, which is filed at the same term at which the judgment was rendered, so that by at least three Supreme Court decisions and by the decision of our circuit court, this court has authority in this instance to set aside the judgment in this case, -at its discretion, upon good cause being shown.
Now the statement that it is at its discretion, does not mean that the court may, just because it desires, set aside a judgment; it means that more or less discretion is given to the court in doing that; but it can not do it unless it is upon such ground as the higher court would say justified the lower court in doing what it did.
The case cited in 19 C. C., 237, was where the lower court had set aside the judgment, and the circuit court of this circuit affirmed the lower court, recognizing, however, the fact that the circuit court had a right to decide whether the lower court was right or wrong in setting aside that judgment.
I find a later case decided by our circuit court, which is in 21 C. C., 764, the opinion being delivered by the same judge, in which a judgment was set aside by the court of common pleas, and error was prosecuted, and our circuit court decided that the judge of the court of common pleas was wrong in setting aside the judgment, and they reversed the action of the common pleas in setting aside the judgment, and reinstated the former judgment. Thus the matter has been twice before the circuit court 'in this district; in one case the holding was that the common *324 pleas court was right, and in the other that it was wrong; and if counsel will read the case I have just referred to, they will find it cites a large number of oases upon this subject, and they will also find some very significant language used by Judge Marvin, which I think applies to the case at bar.
Now the question as to what the court ought to do in this case about setting this judgment aside depends upon what the facts are.
I find from the testimony adduced -at the trial, where one side only was heard, and from the facts and testimony introduced at the hearing of the motion to set aside the' judgment, that the facts are substantially as follows:
The plaintiff, who lived near Oberlin, was the owner of certain personal property; that her daughter purchased a piano and moved it to plaintiff’s house, and desiring to protect said property, and especially said piano against loss by fire, plaintiff applied to J. H. Lang for insurance. He issued to her an insurance policy of the defendant company, for which she paid. One of the provisions of said policy was, that it covered the property of any member of the family of plaintiff while in the premisses described. The piano was mortgaged, and a chattel mortgage was duly filed with the township clerk, and testimony was introduced at the hearing of the motion, and I think at the trial too, to the effect that said agent of the company knew about this chattel mortgage. A fire occurred and the defendant company sent an adjuster, after notice of the fire, to see the plaintiff, Mrs. Burrell. First he went to Norwalk, as the testimony showed, to see the company that sold the piano and had the mortgage upon it; and he then went to see the plaintiff, and her testimony and the testimony of her witnesses showed that he represented to her that the piano was not insured, and that she could not recover anything for that; that if it was insured or covered by the policy, that the chattel mortgage on it rendered that part of the insurance void; that the piano company were about to sue her and attach whatever was due her as insurance on the balance of the property covered by the policy, and that if she did not settle and secure her money, whatever was coming to her, at once, that she never would get anything, because the *325 piano company would take that for the balance due on the piano; that upon those representations she settled a five hundred dollar claim for $146.50 and gave a receipt therefor, and gave up her policy.
I might say that this fraud and deception is not denied in this court by any testimony upon which could be predicated a prosecution for perjury. By affidavit the vice-president of the defendant company swears that said claim agent or adjuster never made any such statements or representations; but the claim agent does not swear to that, and' manifestly the man who did swear to it can not know anything about it, except by hearsay, because he was not present.
Testimony on the other side was given upon the hearing in court in the proceedings, upon which, if it was false, could be based a prosecution for perjury. Testimony was also adduced showing that the piano company never made any such statements to the adjuster of the defendant.
This action was brought in June; the defendant, as appears, engaged no attorney at the time, but depended upon its vice-president, who is an attorney at law, and who attends to the business of the company—the preliminary business at least of preparing eases for trial—to look after the case. He received the summons, and his affidavit shows he filed a motion in this court, and that motion was to require this plaintiff to set out a copy >of the insurance policy which they had' theretofore taken from her on settlement, and had then in their possession. That is all there was of that motion, and it was filed notwithstanding the fact that the defendant then had the policy in its possession, and the further fact that the petition alleged that the plaintiff had surrendered said policy to the defendant.
The company sent that motion to the clerk of this court, and the clerk acknowledged receipt of it. "When he sent it he did not ask the clerk to notify him when it was to be heard or when any other proceedings were to be had in the ease; when the clerk acknowledged receipt of it, he wrote nothing else in reference to the case. The clerk did not thereafter write to the defendant, nor did the defendant thereafter write to the clerk in reference to the case.
*326 No local attorneys were employed. The motion in due course of time was heard and overruled at a former term. And then, as I have stated, at this term when the docket was called the case was placed upon the assignment for trial, and was reached and judgment was entered in the manner I have indicated. As an excuse for their not attending the case, they say, the affidavit says that the attorney in charge of the matter has had thirteen years practice in several states, and he never has known of a ease where the' clerk did not notify foreign counsel of every step that was being taken in a case, and that he feels sure there is some order of this court requiring the clerk to do that. Perhaps ordinarily this court ought not to take judicial notice of such matters, but this being somewhat of a discretionary matter, I do take judicial notice of the fact that it is not the custom and never has been in this court to notify foreign counsel of the proceedings in reference to their cases, and I do not think that such is the practice of the clerks in this st-ate, except when requested so to do; but even if requested, Judge Nye has held, to my knowledge, that the clerk being so requested is made the agent of the party requesting him, and his dereliction of duty or failure to notify, is the fault of his principal, and relief has been refused in this court where the party claimed that the clerk has promised to do something and had not done it.
The' court has never ordered the clerk to notify foreign counsel in reference to their eases.
Now in the ease to which I have referred, which was decided by Judge Marvin, Mr. Burrows, the defendant’s attorney in that case, made affidavit that judgment was taken by default, and I call attention to 'the fact that these cases are all judgments by default, and the case I am now deciding, while in a sense a default judgment, really in fact was a judgment rendered upon evidence in the case, covering one side of the ease.
In that case George II. Burrows made affidavit that by mistake of a clerk in his office that case was omitted from the list of cases to which his attention should have been called, and that the attorney did not know that he was in default for answer until after the judgment was taken, He also set up what his *327 defense would be if the judgment was set aside, and the' common pleas court set the judgment aside. Error in setting it aside was prosecuted, and Judge Marvin in delivering the opinion of the circuit court, says:
“That the excuse given for not filing an answer in time by counsel for defendant is a very weak one can not be denied; and the court would have been justified in refusing to set aside the judgment.”
Now there was a ease where the attorney relied upon some-. body he had a right to rely upon, that he was- paying for attending to those matters, and he had a large amount -of business, and there was some excuse for his not attending to the case.
It is held in the-60 Minn., 117, “that it is error to set aside a default, caused by the negligence of an attorney.”
It is held in the 179 Ills., 68, “that the mistake of an attorney ’s clerk is the inadvertence of the attorney and not ground for setting aside a judgment.”
“Default will not be set aside for negligence of attorney.” 56 California, 175.
“Inadvertence of the -attorney is no ground for setting aside a default.” 44 Ill. App., 233.
If the attorney for defendant 'forgets the date for trial, default will not be set -aside. 2 Ind. App., 55.
So there seems to be a large number -of decisions al-ong that line, and the circuit court of this circuit placed enough reliance in the propositions of those eases to reverse a case where a judgment had been set aside, where the e-xcuse for the attorne}' was at least as valid -an excuse -as the one in the ease at bar.
I therefore hold that in the ease at bar, the excuse as- set forth in the affidavit is not such as- to justify the court in setting aside the judgment.
But in the case in the 21 C. C., 764, the circuit court went further, and considered the defense that the defendant would set up if a new trial was granted, and the'-eourt came to the conclusion that that defense was not a good- defense, and of course they bad to come to -that conclusion without having fully heard the merits of both sides of the case.
Chamberlam c& Hamlin, for plaintiff.
F. D. Prentice, for defendant.
In the case I am now deciding I heard fully one side of the claims of fraud; I have not heard fully the claims on the other side; I have the affidavits of parties that do not know.anything about it that deny there was any such fraud.
The amount of insurance' in this case was $500. The insured was a widow woman, an elderly lady, the loss as shown by the proof was a total loss, practically a loss of $500 and a settlement was made for $146.50 with an adjuster, and if I should set this aside I do not believe that any jury would hold the plaintiff to a settlement of $146.50 for that claim, under the circumstances.
The result would be great inconvenience and expense to her, because of the neglect of the defendant.
Entertaining these views, and believing from the facts in this ease that substantial justice will be done -by refusing the motion to set aside judgment in this ease, I will make that order, giving the defendant the benefit oi an exception.
I might add, that I have felt that the practice in this county in reference to judgments by default has not been exactly as it should be; that is, that a judgment means something, and when it is taken in court it ought to be treated as meaning something, and it ought not to be set aside, except upon good and sufficient grounds in furtherance of justice. I believe we ought to pay more attention than we have done to our answer days and fo our defaults, and not think that merely because a matter is neglected, that by asking it parties can be placed back where they were.