# THOMAS BATES

*v.*

# OWEN BALL *et al.*

1. EVIDENCE. In an action of trover, to recover the value of a promissory note alleged to have been obtained from the plaintiff under duress upon a *capias ad respondendum* issued at the suit of the defendant, the constable to whom the *capias* had been delivered testified that the plaintiff was not arrested under it, but under a bail piece, wholly disconnected from the *capias* or the transaction upon which it was issued, and that the plaintiff did not know of the existence of the *capias*. The constable was permitted to refer to the recognizance, and it was read in evidence against the objection of the plaintiff: *Held*, that there was no error in permitting the recognizance to be read as a basis for the evidence of the constable as to the fact that he arrested the plaintiff under it.

2. In an action of trover to recover the value of a promissory note alleged to belong to the plaintiff, and to have been converted by the defendant, where the plaintiff read in evidence the record of a judgment rendered upon the note in favor of the defendant, it was proper to permit the defendant to read in evidence the executions issued upon such judgment, and the return of the sheriff thereon showing that the judgment was unsatisfied.

3. DRUNKENNESS—*when it renders a contract voidable.* To render a transaction voidable on account of drunkenness of a party to it, it should appear that he was so drunk as to have drowned reason, memory and judgment, and impaired his mental faculties to an extent that would render him *non compos mentis* for the time being, especially when the other parties connected with the transaction have not aided in or procured his drunkenness.

4. INSTRUCTIONS—*may be given orally by consent of parties.* Whilst the statute requires that the instructions given to the jury shall be in writing, there is no doubt that the parties may waive that provision of the law, and when they do so, and consent that the court may instruct the jury orally, they are estopped from afterwards objecting.

5. PRACTICE IN THE SUPREME COURT. If any matter is improperly embodied in a bill of exceptions, the party alleging it should take the proper steps to have it stricken out before he assigns errors, and if this is not done, the case must be decided on the record as it is presented.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. JAMES STEELE, Judge, presiding.

This was an action of trover, brought by the plaintiff in error against the defendants in error, for the conversion of a promissory note belonging to and payable to the plaintiff in error. It is alleged in the declaration that the defendants in error caused the arrest of the plaintiff under a *capias ad respondendum,* and whilst he was so under arrest, and for the purpose of procuring his release and freedom, caused him to assign the note to John McVey, one of the defendants, without any consideration whatever other than to procure his release from duress, and that the said John McVey assigned the note to Owen Ball, another one of the defendants, who obtained a judgment on the note in his favor against the makers. The jury found the defendants not guilty, and judgment was rendered accordingly.

Mr. EDWARD H. BRACKETT, and Mr. LUKE REILEY, for the plaintiff in error.

Mr. D. D. EVANS, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is objected that the court below erred in admitting improper evidence on behalf of defendants in error. Plaintiff in error attempted to establish, as a defense, that he had been arrested on a *capias ad respondendum,* at the suit of Ball, for the purpose of compelling him to assign the note in controversy, and that he was thus induced to make the assignment. Hall, the constable, to whom the *capias* had been delivered, and who then held it, testified that plaintiff in error was not arrested under the *capias,* nor did he know that it was in existence, but that he was arrested under a bail piece, wholly disconnected from the *capias* or the transaction upon which it was issued, and he was permitted to refer to the recognizance, and it was read in evidence against the objections of plaintiff in error. In this there was not the semblance of error. It was perfectly legitimate, and, as all know, had plaintiff in error objected to the constable testifying to having arrested him under the recognizance, it would have been necessary to read it in evidence. to authorize the oral evidence, and there could not be the slightest objection to its being read as a basis for the evidence of the constable as to the fact he arrested him under it.

It is also objected that the court erred in permitting defendants in error to read in evidence the executions and fee bills issued on a judgment recovered on the note plaintiff in error assigned to Ball, and for which this suit was brought. Plaintiff in error had read the summons, declaration and judgment in that case, and we do not see why it was not proper for defendants in error to follow it up with these executions and fee bills in the case. One was as legitimate as the other.

If plaintiff in error proved that a judgment was recovered on the note, why should defendants in error be precluded from proving that the judgment remained unpaid. Plaintiff in error was endeavoring to prove that the makers of the note

were solvent, and defendants were endeavoring to prove they
were insolvent. If plaintiff in error sought to establish the
inference that defendants in error regarded the makers as sol-
vent, by suing and recovering the judgment, the latter could
surely prove that he was mistaken, by the return of *nulla
bona* by the officer. In this we perceive no error.

We think that the defense of duress wholly failed. The
constable and Fitzimmons both swear that plaintiff in error
had no knowledge of the existence of the *capias*, and their
evidence is only opposed by that of plaintiff in error, and it
appears he was largely under the influence of liquor, and, if
arrested as claimed, he could have, no doubt, produced the
docket of the justice of the peace, if not the *capias* with the
officer's return. We regard the evidence on this question as
preponderating largely in favor of defendants in error.

It is also urged that plaintiff in error was not bound by the
transaction, because he was drunk at the time he assigned the
note. We think the evidence shows that he was at the
time drunk. He swears he was, and he is corroborated by
the evidence of other witnesses. But he was manifestly not
so drunk but he knew what he was engaged in at the time.
He, on the trial, testified to the circumstances attending the
transaction. He says he took out the note and threw it down,
and told them to take it, and that they had better take his
clothes. Had he been so drunk as to render the assignment
void, he could not have known or remembered what he did.
To render the transaction voidable, he should have been so
drunk as to have drowned reason. memory and judgment, and
impaired his mental faculties to an extent that would render
him *non compos mentis* for the time being, especially as there
is no pretense that any person connected with the transaction
aided in or procured his drunkenness. The rule has never,
so far as our knowledge extends, been announced that mere
drunkenness is sufficient to release a party from his contracts.
We fail to perceive from the evidence that the assignment was
procured by fraud. force or duress, and a careful examination

of the evidence satisfies us that it largely preponderates in favor of the verdict of the jury.

It is contended that the court erred in instructing the jury orally, when the statute requires instructions to be given in writing. Whilst such is the requirement of the statute, there can be no doubt that the parties may waive that provision of the law, and the bill of exceptions shows the court so instructed by consent of the parties. Having done so, they are estopped from afterwards objecting. Such a practice as is contended for can not be sanctioned. It would enable parties to induce such consent, and if the finding should be adverse, then assign error and reverse the judgment. The parties, having consented, must be held to their act. They may waive this provision of the law just as they may others that have never been challenged in practice.

It is again insisted that the verdict should have been set aside, because one of the jurors, after they retired to consider of their verdict, sent the officer for some medicine to relieve him of an attack of colic and diarrhœa. It appears that it consisted of brandy, laudanum and pepper. But we are unable to find any evidence as to the quantity he drank, and there is no evidence that it in the slightest degree affected his mind or his vote on the verdict. He, in an unsworn affidavit, states that he did not know of what the medicine was compounded; that, before he drank of it, a vote had been taken, and that he then voted as he did on the final adoption of the verdict; that none of the other jurors partook of it; that it in nowise affected his mind; that he had the colic and diarrhœa, to attacks of which he was subject. And ten other jurors certify that they believe his statement to be true.

This unsworn statement and certificate were, as the bill of exceptions states, read in evidence on the motion for a new trial, and it does not appear that any exception was made to its being read in evidence. It is true, it is said that the clerk improperly copied these papers into the bill of exceptions. This we can not know. We find them in the record, and it

imports verity. If improperly copied into the bill of exceptions, the proper steps should have been taken to have had them stricken out, before errors were assigned. The party who urges that they are not properly a part of the record, brought the transcript to this court as it now appears, assigned errors on it, and filed the same, and submitted the cause for decision thereon, and we must decide the case on it.

We perceive no error in this record, and the judgment is affirmed.

*Judgment affirmed.*